UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TEAMSTERS LOCAL UNION NO. 486,

    Plaintiff,

v.                                                             Case No. 2:08-cv-126
                                                             HON. R. ALLAN EDGAR

LODAL, INC.,

    Defendant.
_____/

**MEMORANDUM**

Plaintiff Teamsters Local Union No. 486 (the "Teamsters Union") has brought this action against Defendant Lodal, Inc. ("Lodal") seeking to enforce an arbitration provision in the collective bargaining agreement ("CBA") entered into between the parties. *See* [Court Doc. No. 1, Complaint]. Defendant has moved for summary judgment against the Teamsters Union, claiming that under the terms of the CBA, the Teamsters Union is not entitled to arbitration. [Court Doc. No. 32]. The Teamsters Union opposes the motion for summary judgment and cross-moves for summary judgment claiming there is no issue of fact that the dispute between the parties should be submitted to an arbitrator. [Court Doc. Nos. 33, 34].

The court has reviewed the record, the arguments of the parties, and the applicable law and has determined that Defendant Lodal's motion will be **DENIED**. Plaintiff Teamsters Union's motion will be **GRANTED**. This court has jurisdiction pursuant to the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"), as well as the Federal Arbitration Act, 9 U.S.C. § 4.

**I.     Background**

The parties have provided scant evidence in the record detailing the factual history of the dispute between them. This court has attempted to piece together a picture of the relevant facts from the Complaint, the CBA, and the minimal number of documents filed into the record in support of the motions for summary judgment. Viewed in the light most favorable to the Teamsters Union, the record is as follows.

The parties are bound by the terms of a CBA which came into effect on June 28, 2007 and will expire on March 31, 2011. As alleged in the Complaint, the Teamsters Union is an unincorporated labor organization covered by provisions of the National Labor Relations Act, 29 U.S.C. § 152(5), as well as the LMRA. Lodal is a Michigan corporation with a place of business in Kingsford, Michigan. *See* Complaint, ¶¶ 4-6.

According to the Complaint, Lodal employs approximately 19 individuals who are members of Teamsters Local 486. Complaint, ¶ 8. In October of 2007, Lodal made the decision to layoff some employees. *Id.* at ¶ 10. Following the layoff, according to the Teamsters Union, the following events transpired:

> Three days [following the layoff], 3 employees filed grievances (Terry Trulock, Larry Nasi and Greg Broullire) stating that they were improperly laid off. Throughout October, 2007 the parties met and discussed the 3 grievances and eventually the Plaintiff Union informed the Defendant company that it would be arbitrating the 3 grievances. Thereafter in early November, 2007 the Union emailed a completed FMCS R-43 form, which is a request for an arbitration panel to the Federal Mediation & Conciliation Service (FMCS). On November 8, 2007, FMCS emailed a list of 7 arbitrators to the parties to select an arbitrator. Throughout December, 2007 and January, 2008 the Union's Counsel made phone calls to Lodal's state representative to select an arbitrator. Said representative Scott Vanwolvelaere was always not available or on another phone line and never returned a phone call to the Union's attorney. Finally, the Union's counsel was able to make telephone contact on January 24, 2007 with Mr. Vanwolvelaere

>whose only response was he had never received a list of Arbitrators from FMCS. . . . . Plaintiff' counsel had made 8 phone calls and left phone messages that were not returned and because FMCS is very accurate in providing lists of arbitrators, it was apparent that Mr. Vanwolvelaere was attempting to delay the selection of an arbitrator. . . .
>
>The parties began the selection of an arbitrator in February, 2008. On February 5, 2008 the Union's attorney informed Lodal's attorney who he was striking from being the arbitrator. On February 11, 2008 Lodal's attorney struck an arbitrator from the panel. On February 15, 2008 the Union struck an arbitrator from the panel. Thereafter, the Union's counsel made repeated requests to hear Lodal's next elimination. On February 28, 2008 Lodal's attorney emailed that he would get back soon. On March 10, 2008 the union's attorney wrote to Lodal's attorney requesting that he contact him to continue selecting an arbitrator.
>
>Despite repeated requests from the Union's counsel, Lodal's attorney never responded again. On March 27, 2008 Plaintiff filed an Unfair Labor Practice Charge with the [National Labor Relations Board ("NLRB")]. During the NLRB's investigative process, the NLRB stated Board Law does not recognize an employer's refusal to participate in the arbitration process as an unfair labor practice, unless there is a pattern of refusing to comply, i.e. 3 or 4 cases of not participating. Accordingly, the Union voluntarily withdrew the NLRB charge and has turned to this Court for relief.

Complaint, ¶¶ 11-31.

The CBA contains provisions regarding the use of arbitration to resolve some forms of employee grievances. [Court Doc. No. 15, CBA, Article X]. The CBA also contains provisions relating to reductions in force. CBA, Article IX.

With respect to reductions in force, the CBA provides in relevant part:

>If, in the opinion of the Company, it becomes necessary to reduce the work force, the following procedures shall apply:
>(a) In case of a reduction of work force in skill level 1, employees shall be laid off on the basis of their plant seniority without regard for the department in which they work providing they have the skill and ability to perform the work on a production basis.
>(b) In case of a reduction of work force in classification skill level 6.0, employees will be laid off on the basis of his [sic] seniority. . . . In the case of a reduction in work force in skill level 2.0 and above through 5.0, reductions in work force shall

> be based on skill and ability to perform a job on a production basis and a satisfactory attendance record, as determined by the Company, with plant seniority being the deciding factor if those factors are equal. . . .

CBA, Article IX, § 1, (a)-(b).  The CBA further provides that "[i]n giving effect to the provision of this Article with respect to the skills and ability of an employee to do a job, the Company shall make the determination of whether an employee has the skills and ability to do all phases of a specific job on a production basis."  CBA, Article VIII, § 10.

The CBA also contains a detailed grievance and arbitration procedure:

> Section 1.  It is the intent of the parties to this Agreement to prevent grievances and to settle any which may occur as fairly and promptly as practical.  Therefore, it is agreed that there shall be time limits between the occurrence of the alleged violation and the settlement thereof in accordance with the provisions of this Article.
>
> Section 2 - Grievance Procedure.  Misunderstandings and grievances will be processed in the following manner, and within the stated time limits:
> STEP I.  Misunderstandings may be resolved verbally between the employee and his foreman.  The proper Union representative may be included.  The foreman may give his verbal answer within one (1) working day after its presentation.
> STEP II.  If the misunderstanding is not settled in Step I, a written grievance may be filed with the Manufacturing Manager.  The grievance must be filed within three (3) working days after the occurrence of the alleged violation.  The Manufacturing Manager will submit his answer in writing in not more than three (3) working days after his receipt of the grievance.
> STEP III.  If the grievance is not settled in Step II, the grievance may be submitted in writing to the President.  It must be submitted within three (3) working days from the receipt of answer in Step II.  The President and/or his representative(s) shall meet with the Grievance Committee within three (3) working days after receipt of the grievance at this Step.  The Grievance Committee shall arrive at a decision within ten (10) working days after the date of first convening, unless it is mutually agreed by the parties that additional time shall be allowed for arriving at a decision.  In the event that a decision cannot be reached, the grievance may be carried to arbitration by either party, giving written notice to the other party within not more than thirty (30) calendar days after the date of the last joint committee meeting.
>
> Section 3.  Any grievance not referred to the next step within the prescribed time

> limits (or such extension which may have been agreed upon in writing) shall be automatically closed upon the basis of the last Company proposal.
>
> Section 4 - Arbitration Procedure. The arbitrator will be selected by agreement between the Company and the Union. If they fail to agree within fifteen (15) calendar days after the notice of intent to go to arbitration, the arbitrator will be selected from a list of names provided by the Federal Mediation and Conciliation Services. . . .
> (a) The arbitration hearing will be held as soon as a date can be set which is acceptable to the arbitrator and to both parties.
> (b) The arbitrator will mail his written award no more than thirty (30) calendar days after the conclusion of the arbitration hearing, unless it is agreed to extend the time to file post-hearing briefs, or for other purposes.
> (c) The arbitrator's award shall be based upon the purpose and intent of this Agreement. The arbitrator shall have no authority to add to, delete from, or modify any of the terms of this Agreement. He shall have no authority to give any general wage increase or decrease or fringe benefit increases or decreases. . . .

CBA, Article X, Grievance and Arbitration Procedure. The court has found no other provision in the CBA pertaining to arbitration of disputes, nor have the parties directed the court's attention to any other such provision.

The record contains very little additional information regarding the factual events leading to the instant action. It demonstrates that former Lodal employees Larry Nasi and Terry Trulock each completed a document entitled "Grievance Report" on October 15, 2007. [Court Doc. No. 33]. The Grievance Reports indicate that Mr. Nasi had been employed with Lodal for 30 years and that he worked as a machine operator. His report indicated that he was laid off for lack of work, and he wrote "I should [be] ab[l]e to work another department after working 30 years." *Id.* He sought to be made whole. At the bottom of the Grievance Report, Mr. Nasi's supervisor wrote the following: "The Company has the right to determine skill & ability. Article XIII Section 10. Grievance Denied." *Id.*

Mr. Trulock stated his grievance as follows: "I have more seniority over three other guys

over on the EVO line and on painting two guys [sic]. I put motors together before when one guy went on vacation. I also went to paint line and did work there to [sic]." [Court Doc. No. 33]. He also sought to be made whole. *Id.* His supervisor wrote on the bottom of the Grievance Report the following: "When the dust settles, we will be down to (5) people on the end line, Terry's limited experience building motors for 6 weeks does not give him sufficient background to bump others capable of working multiple jobs on the line. Company's position is that it is our right to determine skill and ability. Article VIII Section 10. Grievance Denied." [Court Doc. No. 33].

The record does not reveal what other steps the two grievants took to appeal the denial of their grievance or if the other employee mentioned in the Complaint, Greg Broullire, ever filed a Grievance Report. Defendant Lodal submits the affidavit of Scott Van Wolvelaere in support of its motion for summary judgment. [Court Doc. No. 32-2, ("Van Wolvelaere Aff.")]. Van Wolvelaere asserts that he was the Lodal Plant Manager during the relevant layoff. Van Wolvelaere Aff., ¶ 1. He contends that the Teamsters Union has admitted several requests for admission because it failed to respond to the requests. The request for admissions sought admissions that the three employees at issue were all classified as being between work skill levels two through five. *Id.* at ¶ 8(a). Mr. Van Wolvelaere asserts that, according to the CBA, Lodal had the right to select employees for layoff on the basis of skill, if the employees were classified in work skill levels two through five. *Id.* at ¶ 8(b)-(c). Mr. Van Wolvelaere further asserts in his affidavit that the three employees at issue never complied with the grievance procedure outlined in the CBA and never took their grievances to Step III under the CBA. *Id.* at ¶ 8.

Defendant Lodal's position is that under the terms of the CBA, because the relevant

employees did not proceed with their grievances to Step III, the grievances were automatically closed according to the basis of the last Lodal proposal. *Id.*, CBA, Article X, § 3. Defendant Lodal thus contends that there is no grievance to arbitrate. *Id.* at ¶ 12. The Teamsters Union does not attempt to demonstrate that it ever responded to Lodal's requests for admission, nor does it argue that the requests for admission should not properly be deemed admitted. However, the Teamsters Union still seeks this court's order to compel arbitration.

## II.    Standard of Review

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to

which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

**III.   Analysis**

Both parties have failed to provide this court with substantive legal analysis in support of their positions. Despite the dearth of citation to relevant case law, the court has determined, through its own research, that this matter should be submitted to arbitration for resolution.

The Federal Arbitration Act provides in relevant part:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration

> proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . .

9 U.S.C. § 4.  The NLRA provides that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."  29 U.S.C. § 185.

It is true that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit.'"  *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 123 S.Ct. 588 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347 (1960)).  Further, the "question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'"  *Howsam*, 537 U.S. at 83 (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415 (1986)).  However, the "question of arbitrability" has a "far more limited scope":

> The Court has found the phrase applicable in the kind of narrow circumstance where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbitrator would do so, and, consequently, where reference of the gateway dispute to the court avoids the risk of forcing parties to arbitrate a matter they may well not have agreed to arbitrate.

*Howsam*, 537 U.S. at 83-84.

In *John Wiley & Sons, Inc. v. Livingston*, the U.S. Supreme Court addressed "whether the courts or the arbitrator is the appropriate body to decide whether procedural prerequisites which, under the bargaining agreement, condition the duty to arbitrate have been met." 376 U.S. 543, 544, 84 S.Ct. 909 (1964). In *John Wiley & Sons* the employer claimed precisely what Lodal is claiming here, that it had "no duty to arbitrate" the dispute because steps one and two of the grievance process had not been followed. *Id.* at 556. The Supreme Court disagreed, finding a duty to arbitrate such questions of "procedural arbitrability":

> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. . . . It would be a curious rule which required that intertwined issues of 'substance' and 'procedure' growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result.
>
> Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator. Even under a contrary rule, a court could deny arbitration only if it could confidently be said not only that a claim was strictly 'procedural,' and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award. In view of the policies favoring arbitration and the parties' adoption of arbitration as the preferred means of settling disputes, such cases are likely to be rare indeed. . . . Reservation of 'procedural' issues for the courts would thus not only create the difficult task of separating related issues, but would also produce frequent duplication of effort. . . .
>
> Although a party may resist arbitration once a grievance has arisen, as does [the employer] here, we think it best accords with the usual purposes of an arbitration clause and with the policy behind federal labor law to regard procedural disagreements not as separate disputes but as aspects of the dispute which called the grievance procedures into play.

*Id.* at 557-59.

More recently, the Supreme Court again addressed the question of "procedural arbitrability." *Howsam*, 537 U.S. 79. In *Howsam* the Court addressed an arbitration rule of the National Association of Securities Dealers that provided that a dispute was no longer eligible for arbitration where six years had elapsed from the date of the event giving rise to the dispute. *Id.* at 81. In determining that the dispute of timeliness was one for the arbitrator and not for the court, the Supreme Court noted:

> Indeed, the Revised Uniform Arbitration Act of 2000 (RUAA), seeking to "incorporate the holdings of the vast majority of state courts and the law that has developed under the [Federal Arbitration Act]," states that an "arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled." RUAA § 6(c), and comment 2, 7 U.L.A. 12-13 (Supp. 2002). And the comments add that "in the absence of an agreement to the contrary, issues of substantive arbitrability . . . are for a court to decide and issues of procedural arbitrability, *i.e.*, whether prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide."
>
> Following this precedent, we find that the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge. The time limit rule closely resembles the gateway questions that this Court has found not to be "questions of arbitrability." . . . We consequently conclude that the NASD's time limit rule falls within the class of gateway procedural disputes that do not present what our cases have called "questions of arbitrability."

*Id.* at 84-85 (quoting RUAA § 6, comment 2, 7 U.L.A. at 13).

The Sixth Circuit has followed the Supreme Court's lead regarding finding that questions of time limitations are questions for an arbitrator, and not a court. *See United Steel Workers of America, AFL-CIO-CLC v. Saint Gobain Ceramics & Plastics*, 505 F.3d 417 (6th Cir. 2007) (en banc). In this en banc decision, the Sixth Circuit expressly overruled *General Drivers, Warehousemen & Helpers, Local Union 89 v. Moog Louisville Warehouse*, 852 F.2d 871 (6th Cir.

1988). *Id.* at 424. In *Saint Gobain* the Sixth Circuit addressed a question highly similar to the question presented here. In that case the employer fired two union members, and the union immediately filed grievances pertaining to the discharges. *Id.* at 419. The collective bargaining agreement contained a four-step process for resolution of grievances. The parties submitted the grievances through the first three steps of the process smoothly. The company denied the grievance at the third stage of the process, and the collective bargaining agreement gave the union 30 days to appeal the decision to the fourth stage of the process. The agreement provided that if the union failed to appeal in a timely manner, the union "forfeited its right to arbitrate the grievance." *Id.* The union attempted to appeal the denial of the grievance to the fourth stage of the process, but the company informed the union that its appeal was received after the expiration of the 30-day timeline. The union filed suit in federal district court to compel arbitration. *Id.*

The district court, relying on *Moog*, determined that a federal judge should determine whether the time limitation applied, and it dismissed the grievances due to their untimeliness. *Saint Gobain*, 505 F.3d at 419. A panel of the Sixth Circuit affirmed, and the court granted *en banc* review. *Id.* After analyzing both the *John Wiley & Sons* and *Howsam* cases, the Sixth Circuit determined that:

> [w]hat emerges from *John Wiley & Sons* and *Howsam* is a fairly straightforward rule: A time-limitation provision involves a matter of procedure; it is a "condition precedent" to arbitration . . . ; and it thus is "presumptively" a matter for an arbitrator to decide. In the absence of an agreement to the contrary, in the absence in other words of language in the agreement rebutting the presumption, arbitrators rather than judges should resolve disputes over time-limitation provisions.

505 F.3d at 422. The Sixth Circuit determined that a timeliness provision, such as the one it confronted, was an issue for an arbitrator and not for a court.

> In embracing a presumption that disputes over a timeliness provision are for an arbitrator to decide, we take some comfort from the following: (1) that is what *John Wiley & Sons* and *Howsom* did; (2) that is what the Supreme Court has said we should do; (3) that is what makes sense in light of the background general presumption in favor of resolving collective bargaining and other disputes through arbitration; and (4) that is what every other court of appeals in the country has done.

*Saint Gobain*, 505 F.3d at 424-25 (citations omitted). The Court determined that the parties who wished to contract for a court to resolve issues of timeliness still could do so, but that where the agreement itself was silent, the presumption would be that an arbitrator would resolve timeliness disputes. *Id.*

In this case the CBA provides no indication of whether the issue of timeliness of processing grievances should be submitted to a court or to an arbitrator. Therefore, the exception to the presumption that an arbitrator decides timeliness issues does not apply. Further, it is clear that the current dispute between the parties involves a "procedural" issue pertaining to arbitration - i.e., whether the facts demonstrate that the grievants pursued their claims to Step III in a timely manner. The underlying issue, a grievance regarding a layoff, is precisely the kind of issue that the parties agreed to arbitrate. Thus, it should be foreseeable that an arbitrator would determine the issue of whether the grievances were timely.

Although Lodal seeks to demonstrate admitted facts that the grievances were not timely, it does not matter whether it is obvious that the grievances are now "automatically closed" pursuant to the terms of the CBA. *John Wiley & Sons*, *Howsam*, and *Saint Gobain* make it clear that issues such as the timeliness and procedural issues presented here are clearly ones for an arbitrator to resolve. The parties have failed to augment the record with many factual details that enlighten this court regarding the factual circumstances underlying the grievances and the

grievance procedure that occurred.  Thus, this lack of factual detail gives the court another reason to issue an order compelling arbitration.  An arbitrator will be in a better position to demand a more detailed factual record and to determine whether the grievances are indeed precluded under the CBA and if not, whether the grievances have substantive merit.  Therefore, it will be more efficient to submit the entire dispute to an arbitrator in the first instance.  For these reasons, the court will **DENY** Lodal's motion for summary judgment and **GRANT** the Teamsters Union's motion for summary judgment.

### IV.     Conclusion

For the reasons expressed *supra*, the court will **DENY** Defendant Lodal's motion for summary judgment [Court Doc. No. 32] and **GRANT** the Teamsters Union's cross-motion for summary judgment [Court Doc. No. 34].

A separate judgment will enter.

April 2, 2009

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE